Slip Op 18-95

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DAK AMERICAS LLC and AURIGA POLYMERS INC.,** <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant. | Before: Timothy C. Stanceu, Chief Judge <br><br> Court No. 17-00195 |

## OPINION AND ORDER

[Denying Defendant's Motion to Dismiss]

Dated: August 6, 2018

*Paul C. Rosenthal*, Kelley Drye & Warren, LLP, of Washington, D.C., for plaintiffs DAK Americas LLC and Auriga Polymers Inc. With him on the brief were *David C. Smith*, *Cameron R. Argetsinger*, and *Joshua R. Morey*.

*Mikki Cottet*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel on the brief were *Suzanna Hartzell-Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection.

Stanceu, Chief Judge: Plaintiffs challenge administrative actions of U.S. Customs and Border Protection ("Customs" or "CBP") demanding partial repayment of monetary distributions plaintiffs previously received under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"). 19 U.S.C. § 1675c (2000) (repealed by Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (2006)). Plaintiffs are "affected domestic producers" ("ADPs"), which are parties eligible under the CDSOA to receive monetary distributions paid from duties collected under an antidumping duty ("AD") order on certain polyester staple fiber ("PSF") from the Republic of Korea (the "Korea PSF Order") and an AD

order on PSF from Taiwan (the "Taiwan PSF Order"). Specifically, plaintiffs challenge the actions Customs took in issuing four letters, three of which were dated March 10, 2017 and one of which was dated May 26, 2017, demanding payment of amounts Customs characterized as having been disbursed erroneously to plaintiffs. Compl. ¶¶ 28-30, 36, 42, (July 26, 2017), ECF No. 2 ("Compl."). Plaintiffs seek an order setting aside the demands as unlawful, compelling Customs to return a payment already made by one of the plaintiffs, and enjoining Customs from continuing to make such demands. *Id.*, Relief Requested.

Before the court is defendant's motion to dismiss under USCIT Rule 12(b)(6) for failure to state a claim on which relief can be granted. Mem. in Support of Def.'s Mot. to Dismiss (Dec. 18, 2017), ECF No. 12 ("Def.'s Br."). The court denies the motion.

## I. BACKGROUND

Customs issued the demand letters following the settlement of separate litigation before this Court, to which plaintiffs were not parties. *See* Compl. ¶¶ 28-32; Order of Dismissal, *Nan Ya Plastics Corp., Am. v. United States*, Ct. No. 08-00138 (June 15, 2015), ECF No. 140 (Order of Dismissal following parties' Stipulation of Dismissal) ("*Nan Ya* Dismissal Order"). Nan Ya Plastics Corp., Americas ("Nan Ya"), also a domestic producer of PSF, was added retroactively to the list of ADPs published by the U.S. International Trade Commission ("ITC") for the Korea and Taiwan PSF orders, effective as of Fiscal Year 2007. Compl. ¶ 32. In the demand letters, Customs identified the payment of government funds to Nan Ya as the basis for the demands upon plaintiffs. Compl. ¶ 31.

### A. The Korea and Taiwan PSF Orders

The U.S. Department of Commerce ("Commerce" or the "Department") and the ITC initiated antidumping duty investigations of PSF from the Republic of Korea and PSF from

Taiwan in April 1999.  *Initiation of Antidumping Duty Investigations: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan*, 64 Fed. Reg. 23,053 (Int'l Trade Admin. Apr. 29, 1999); *Certain Polyester Staple Fiber From Korea and Taiwan*, 64 Fed. Reg. 17,414 (Int'l Trade Comm'n Apr. 9, 1999).  After the ITC gave Commerce notice of its affirmative injury determination on May 15, 2000, Commerce published its amended final determinations of sales at less than fair value on May 25, 2000 and issued the Korea PSF Order and the Taiwan PSF Order.  *Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Polyester Staple Fiber From the Republic of Korea and Antidumping Duty Orders: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan*, 65 Fed. Reg. 33,807-08 (Int'l Trade Admin. May 25, 2000).  The Korea PSF Order and the Taiwan PSF Order remained in place as of May 2018.  *See Polyester Staple Fiber From the Republic of Korea and Taiwan: Final Results of Changed Circumstances Reviews, and Revocation of Antidumping Duty Orders, in Part*, 83 Fed. Reg. 23,253 (Int'l Trade Admin. May 18, 2018).

<u>B. The Parties to this Action</u>

Plaintiffs DAK Americas LLC ("DAK Americas") and Auriga Polymers Inc. ("Auriga") are ADPs that were eligible to receive, and did receive, CDSOA distributions under the Korea PSF Order.  DAK also received disbursements in its capacity as a successor-in-interest to Wellman Inc. ("Wellman"), another ADP, under both the Korea PSF Order and the Taiwan PSF Order.  Compl. ¶ 3; *see also* 19 C.F.R. § 159.61(b)(1)(i) (providing for successor companies to be eligible to receive CDSOA disbursements).  Defendant in this action is the United States.[1]

---

[1] In the Complaint, plaintiffs named as defendants the United States, U.S. Customs and Border Protection, and Kevin K. McAleenan, Acting Commissioner of Customs.  These parties should be identified as a single defendant, the United States, and the court is ordering the caption to be modified accordingly.

C. The Continued Dumping and Subsidy Offset Act of 2000

In 2000, after the Korea and Taiwan PSF Orders were issued, Congress amended Title VII of the Tariff Act of 1930, adding section 754, the Continued Dumping and Subsidy Offset Act, codified at 19 U.S.C. § 1675c (2000). This "Byrd Amendment" was intended to strengthen the remedial effects of trade remedy laws. Trade remedies under the Tariff Act of 1930 were designed to neutralize the distortive effects of unfair trade practices (i.e., dumping and subsidization) by assessing equivalent duties that, prior to the passage of the CDSOA, were deposited to the U.S. Treasury and became available to pay general government expenses. *See Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1379 (Fed. Cir. 2003) (explaining that, before the CDSOA, "the duties collected pursuant to the antidumping statute were deposited with the Treasury for general purposes"). In enacting the Byrd Amendment, Congress noted, among other findings, that "[t]he continued dumping or subsidization of imported products after the issuance of antidumping orders or findings or countervailing duty orders can frustrate the remedial purpose of the laws by preventing market prices from returning to fair levels." Continued Dumping and Subsidy Offset Act of 2000, Pub. L. No. 106-387, § 1(a), §1002(3), 114 Stat. 1549, 1549A-72 (2000). To afford further relief, the Byrd Amendment provided for duties assessed under AD and countervailing duty ("CVD") orders to be placed in "Special Accounts" established within the U.S. Treasury for each AD and CVD order and distributed to ADPs each fiscal year during which the relevant AD or CVD order remained in effect. 19 U.S.C. § 1675c(c)-(e) (2000); 19 C.F.R. § 159.64.[2] ADPs may receive CDSOA distributions

---

[2] Under the Customs regulations implementing the CDSOA, funds enter the Special Accounts only after entries of the goods subject to the AD and/or CVD orders have been liquidated, meaning that duties have been finalized, collected, and deposited. Before liquidation occurs, duties collected by Customs (i.e., cash deposits) are placed in "clearing accounts." *See* (continued . . .)

as reimbursement for "qualifying expenditures," i.e., specified business expenditures such as manufacturing facilities, equipment, input materials, health benefits for employees, and "[w]orking capital or other funds needed to maintain production." 19 U.S.C. §§ 1675c(b)(4) (2000), 1675c(d)(2)-(3) (2000); 19 C.F.R. §159.61(c).

The CDSOA provided that a party may be designated as an ADP only if it "was a petitioner or interested party in support of the petition with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered." 19 U.S.C. § 1675c(b)(1)(A) (2000). The statute set out the process for designation of ADPs, beginning with the ITC's forwarding to Customs a list of persons potentially eligible for ADP status—i.e., "a list of petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response"— within sixty days of the issuance of an AD or CVD order. *Id.* §1675c(d)(1) (2000). Customs publishes lists of potential ADPs in the Federal Register annually for each AD and CVD order prior to making distributions. *Id.* § 1675c(d)(2). After parties on the list of potential ADPs certify that they desire a distribution and meet the eligibility criteria for ADPs, including by certifying that they have not yet received disbursements for the qualifying expenditures claimed, Customs distributes the assessed duties in the amounts claimed by eligible ADPs, making a pro rata distribution according to qualifying expenditures claimed in cases where the total amount claimed by ADPs exceeds the available funds in the relevant Special Account. *Id.* § 1675c(d)(2)-(3) (2000).

---

(. . . continued)
19 C.F.R. § 159.64(a). When entries are liquidated, the corresponding funds in the clearing accounts are transferred to Special Accounts, from which they are available for distribution to ADPs. *See* 19 C.F.R. § 159.64(b)(1).

Not long into the Byrd Amendment's existence, eleven foreign nations challenged the Byrd Amendment before the World Trade Organization ("WTO"). In WTO proceedings, panels of the Dispute Resolution Body and the Appellate Body found Byrd Amendment distributions to be inconsistent with the commitments made by the United States in the Uruguay Round Agreements. Panel Report, *United States-Continued Dumping and Subsidy Offset Act of 2000*, WTO Docs. WT/DS217/R, WTDS234/R (adopted Sept. 16, 2002); Appellate Body Report, *United States-Continued Dumping and Subsidy Offset Act of 2000*, WTO Docs. WT/DS217/AB/R, WTDS234/AB/R (adopted Jan. 16, 2003). In February 2006, Congress repealed the Byrd Amendment by means of a provision in the Deficit Reduction Act of 2005, subject to a savings provision. Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (2006). The repeal provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would, but for [the repeal], be distributed . . . shall be distributed as if section 754 of the Tariff Act of 1930 [i.e., 19 U.S.C. § 1675c] had not been repealed." *Id.* In 2010, Congress further limited distributions under the CDSOA, prohibiting payments from entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3162-63 (2010). The CDSOA was also amended by the Trade Facilitation and Enforcement Act of 2015 to provide authority for the government to deposit certain interest earned on antidumping and countervailing duties into Special Accounts created under the CDSOA. Pub. L. 114-125, § 605, 130 Stat. 122, 187-88 (2016).

### D. The *Nan Ya* Litigation

Beginning with Fiscal Year 2001, the ITC compiled lists of potential ADPs under both the Korea PSF Order and the Taiwan PSF Order, and Customs published the lists annually. Plaintiffs—or their related or predecessor entities—appeared on these lists and have received CDSOA disbursements for many of the years during which the Korea PSF Order and Taiwan PSF Order have been in place.[3]  Nan Ya did not appear as a potential ADP under the Korea PSF

---

[3] *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 40,782, 40,799 (Aug. 3, 2001); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 67 Fed. Reg. 44,722, 44,737 (July 3, 2002); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 68 Fed. Reg. 41,597, 41,635-36 (July 14, 2003); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 69 Fed. Reg. 31,162, 31,199 (June 2, 2004); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 70 Fed. Reg. 31,566, 32,154 (June 1, 2005); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 71 Fed. Reg. 31,336, 31,378, 31,380-81 (June 1, 2006); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,625, 29,628 (May 29, 2007); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196, 31,240 31,242 (May 30, 2008); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,859, 25,861 (May 29, 2009); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 75 Fed. Reg. 30,530, 30,575, 30,577 (June 1, 2010); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 76 Fed. Reg. 31,020, 31,060, 31,062 (May 27, 2011); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 77 Fed. Reg. 32,718, 32,759, 32,761 (June 1, 2012); *see also* U.S. Customs and Border Protection, Continued Dumping and Subsidy Offset Act, *CDSOA Data Organized by Fiscal Year*, available at https://www.cbp.gov/trade/priority-issues/adcvd/continued-dumping-and-subsidy-offset-act-cdsoa-2000 (last accessed July 31, 2018).  DAK Americas does not appear on the lists of potential ADPs published in the Federal Register, but a related entity ("E.I. du Pont de Nemours") does.  E.I. du Pont de Nemours appears to be a related entity of DAK Americas based on CBP's annual CDSOA disbursement report for 2002, which shows a distribution to "DAK Fibers LLC (E.I. du Pont de Nemours)."  *See* U.S. Customs and Border Protection, Continued Dumping and Subsidy Offset Act, *CDSOA Data Organized by Fiscal Year*, "CDSOA FY2002 Disbursements FINAL," *available at* https://www.cbp.gov/sites/default/files/documents/fy2002_final_disb.pdf (last accessed July 31, 2018).  DAK Americas appears as a recipient of CDSOA funds on all of Customs' Annual CDSOA Disbursement Reports for Fiscal Years 2002 to 2011, as alleged in the Complaint.  Compl. ¶ 2.  The court need not rely on CBP's reports because it credits the allegations in plaintiffs' Complaint for purposes of ruling on the motion to dismiss.

Order or the Taiwan PSF Order in any of the Federal Register notices or annual CDSOA disbursement reports issued by Customs for Fiscal Years 2001 through 2016.[4] Nan Ya nonetheless submitted a certification of eligibility as an ADP for Fiscal Year 2007 and on April 18, 2008 commenced an action against the United States asserting entitlement to its pro rata share of CDSOA disbursements issued under the Korea PSF Order and the Taiwan PSF Order, beginning in Fiscal Year 2007. Compl. ¶ 26; Def.'s Br. 4-5; Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss 2 (Jan. 22, 2018), ECF No. 13 ("Pls.' Br."); *see also Nan Ya Plastics Corp., Am. v. United States*, 36 CIT __, __, 853 F. Supp. 2d 1300, 1306-07 (2012) ("*Nan Ya I*"), *vacated in part*, 37 CIT __, __, 916 F. Supp. 2d 1376, 1380-82 (2013) ("*Nan Ya II*").

On July 12, 2012, a three judge panel of this Court granted the government's motion to dismiss the *Nan Ya* action for failure to state a claim upon which relief could be granted. *Nan Ya I*, 36 CIT at __, 853 F. Supp. 2d at 1314. On the following day, July 13, 2012, the Court of Appeals for the Federal Circuit ("Court of Appeals") ruled in *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, stating:

> We hold that when a U.S. producer assists investigation by responding to questionnaires but takes no other action probative of support or opposition, the producer has supported the petition under [19 U.S.C.] § 1675c(d) and is eligible

---

[4] Nan Ya first appeared as a potential ADP (under both the Korea PSF Order and the Taiwan PSF Order) in the Federal Register publication providing notice of distributions for Fiscal Year 2017. *Distributions of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 82 Fed. Reg. 25,052, 25,093, 25,095 (May 31, 2017). Nan Ya also appeared on the list published in the Federal Register for Fiscal Year 2018. *Distributions of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 83 Fed. Reg. 25,116, 25,156, 25,159 (May 31, 2018). Nan Ya does not appear as a distributee under the Korea PSF Order or the Taiwan PSF Order in any of Customs' annual CDSOA disbursement reports, which stopped including the Taiwan PSF Order after 2012 and the Korea PSF Order after 2014 (each following multiple years of $0 in disbursements). *See* U.S. Customs and Border Protection, Continued Dumping and Subsidy Offset Act, *CDSOA Data Organized by Fiscal Year*, available at https://www.cbp.gov/trade/priority-issues/adcvd/continued-dumping-and-subsidy-offset-act-cdsoa-2000 (last accessed July 31, 2018).

for distributions if it can otherwise make the required certification that it has been injured.

684 F.3d 1374, 1382 (Fed. Cir. 2012). The Court of Appeals in *Chez Sidney* noted that implementing its decision "may be as simple as directing the ITC to release funds from the special account," but that it also "may require the Court of International Trade to exercise its power to award a money judgment" against the United States. *Id.* 684 F.3d at 1384 (internal citations omitted). Following the decision of the Court of Appeals in *Chez Sidney*, this Court vacated its July 12, 2012 judgment dismissing the action in *Nan Ya* and issued a new judgment pursuant to USCIT Rule 54(b) dismissing only Nan Ya's constitutional claims and allowing Nan Ya's statutory claims to proceed upon a third amended complaint. In the third amended complaint, Nan Ya alleged that Nan Ya, like Chez Sidney, had selected the "support" box in responding to the ITC's preliminary questionnaire and the "take no position" box in responding to the ITC's final questionnaire. *See Nan Ya II*, 916 F. Supp. 2d at 1381-82. Nan Ya claimed that it could not be denied status as an ADP merely because it had selected the "take no position" options on the petition support portions of its questionnaire responses submitted to Commerce in relation to the investigations resulting in the Korea and Taiwan PSF Orders. *See id.*, 916 F. Supp. 2d at 1379-81; Compl. ¶¶ 26-27. Nan Ya argued that denial of ADP status was unjustified because Nan Ya had never actually *opposed* the petitions and had in fact chosen the "support" option at the earlier preliminary stage. *See Nan Ya II*, 916 F. Supp. 2d at 1379-81.

Following the filing of the third amended complaint in *Nan Ya*, the United States and Nan Ya agreed to a settlement of the *Nan Ya* lawsuit. Compl. ¶ 32; *see also Nan Ya* Dismissal Order. Defendant, citing the Complaint in this case, states that because the remaining funds in the Special Accounts corresponding to the AD orders were insufficient to pay the entire settlement,

the balance of the *Nan Ya* settlement was funded by drawing from the judgment fund of the U.S. Treasury. Def.'s Br. 5 n.4 (citing Compl. ¶ 32).

E. Procedural History of this Action

Customs issued the demand letters to DAK Americas, Auriga, and Wellman nearly two years after the *Nan Ya* settlement, in March and May 2017. Compl. ¶¶ 28-32. Customs sought from DAK Americas a total of $674,449.34, comprising $231,148.82 in CDSOA distributions DAK Americas received under the Korea PSF Order as well as $219,662.91 Wellman received under the Korea PSF order and $223,637.61 Wellman received under the Taiwan PSF Order. Compl. ¶¶ 28-29. From Auriga, Customs demanded repayment of $11,548.84 received under the Korea PSF Order. *Id.* ¶ 30. Customs sent another letter to Auriga in May 2017 demanding an additional repayment of $95,079.75 in CDSOA distributions Auriga received under the Korea PSF Order for Fiscal Year 2010, which Customs noted "should have been included" in its earlier letter to Auriga. Compl. ¶ 30. As authority for the repayment demands contained in the four letters, Customs provided citations to 19 C.F.R. § 159.64(b)(3) and the *Nan Ya* lawsuit. *Id.* ¶¶ 30-32. Auriga has repaid the sum of $11,548.84 demanded by Customs in its initial March 2017 letter. *Id.* ¶ 33. Other than this payment, neither DAK nor Auriga has repaid to Customs any of the amounts demanded. *Id.* ¶¶ 33-34.

Plaintiffs commenced this action on July 26, 2017. Compl. Plaintiffs claim the demands for repayment are unlawful because the CDSOA distributions received by plaintiffs have become "final and conclusive" under the Customs regulation. *Id.* ¶¶ 35-42 (citing 19 C.F.R. § 159.64(f)). Plaintiffs contend that the demand letters issued by Customs are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706." *Id.* ¶ 42. Plaintiffs seek an order (1) declaring that Customs

does not have authority to demand repayment of the CDSOA distributions, (2) declaring that existing distributions to the plaintiffs are final and conclusive, and (3) ordering Customs to refund to Auriga the $11,548.84 repayment that Auriga made in response to a demand by Customs.  *See id.*, Relief Requested.

On July 19, 2018, the court held oral argument on defendant's motion to dismiss.  Oral Argument (July 19, 2018), ECF No. 17.

## II. DISCUSSION

### A. Motions to Dismiss for Failure to State a Claim on which Relief Can Be Granted

In ruling on a USCIT Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts as true all well-pled factual allegations and draws all reasonable inferences in a plaintiff's favor.  *United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298, 1302 (Fed. Cir. 2012) (citing *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 n.13 (Fed. Cir. 1993)).  A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Although a court primarily considers the allegations as set out in the complaint, it "may also look to matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (internal quotation marks and citation omitted).

B. This Action Cannot Be Dismissed According to USCIT Rule 12(b)(6)

Defendant argues, first, that the court must dismiss plaintiffs' case because "plaintiffs have failed to allege facts upon which the Court can conclude that Customs acted unlawfully" according to the standard set forth in the Administrative Procedure Act ("APA"). Def.'s Br. 9 (citing the APA, 5 U.S.C. § 706, under which a court must hold unlawful agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). In support of this argument, defendant submits that "plaintiffs' claim fails as a matter of law because the Appropriations Clause of the United States Constitution, coupled with the language of the CDSOA, authorizes and requires Customs to seek repayment of CDSOA overpayments." *Id.*

Defendant's first argument does not convince the court that this action must be dismissed. The case, brought under the jurisdictional grant of 28 U.S.C. § 1581(i), arises under the APA. Accordingly, the court must construe plaintiffs' claims as presenting the narrow question of whether the four actions taken by means of the demand letters were contrary to law according to the APA standard. The larger and more general question of whether the United States is authorized, or required, by the Constitution or the CDSOA to seek repayment of CDSOA payments extends beyond the claims in this case and, potentially, beyond the reach of the court's subject matter jurisdiction. Plaintiffs' claims are directed to actions Customs has taken, not to other types of actions the United States might take in the future. Even were the court to presume, *arguendo*, that Customs is authorized to seek repayment of CDSOA overpayments, the court could not conclude at this early stage of the litigation that Customs necessarily acted lawfully in taking the actions that are being challenged in this litigation.

Defendant's second argument in favor of dismissal is that "[e]ven assuming, for the sake of argument, the Appropriations Clause did not prohibit retention of CDSOA overpayments, the plaintiffs' claims would still fail as a matter of law because the plain language of 19 C.F.R. § 159.64 does not prohibit or otherwise constrain Customs from seeking collection of any CDSOA overpayments." *Id.* at 9-10. This, too, is not the issue presented by plaintiffs' claims. According to a fact pled in the Complaint, which for purposes of ruling on defendant's motion the court must presume to be true, Customs cited § 159.64(b)(3) as authority for its demands. Compl. ¶ 31. In a challenge to agency action under section 706 of the APA, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) (internal quotation marks omitted). Therefore, the question presented by this case is not, as defendant would have it, whether § 159.64 prohibits or otherwise constrains Customs from seeking collection of any CDSOA overpayments but whether that regulatory provision authorizes the particular actions Customs took by issuing the four demand letters.

The court cannot conclude that the Customs actions challenged in this litigation either were, or were not, authorized by § 159.64(b)(3) by considering only the factual allegations in the Complaint, the text of the regulation, and such other public documents as the court may consider. The first sentence in the cited provision reads as follows:

> *Overpayments to affected domestic producers.* Overpayments to affected domestic producers resulting from subsequent reliquidations and/or court actions and determined by Customs to be not otherwise recoverable from corresponding Special Account as set out in paragraph (b)(2) of this section will be collected from the affected domestic producers.

19 C.F.R. § 159.64(b)(3).[5] The parties disagree on whether § 159.64(b), which in paragraph (2) refers to refunds to importers following reliquidations of "underlying entries composing a prior distribution" and "refunds to importers resulting from any court action involving those entries," authorized the demand letters at issue in this case, which did not arise from refunds to importers but instead from what Customs apparently concluded were overpayments to ADPs resulting from the retroactive designation of an additional ADP. But even were the court to presume that the regulation, in paragraph (b)(3), authorizes Customs to make demands upon ADPs to recover payments arising from the retroactive designation of an additional ADP, the court still could not conclude that plaintiffs' action must be dismissed. Without viewing the demand letters and related record documents, the court cannot examine the underlying determinations Customs made, nor can it consider the "grounds" on "which the record discloses that" the agency's "action[s] w[ere] based." *Changzhou Wujin*, 701 F.3d at 1377. For example, plaintiffs allege that the demand letters contained "a citation to the *Nan Ya* lawsuit," Compl. ¶ 31, but the court cannot determine at this stage of the litigation that the *Nan Ya* lawsuit, or a particular aspect of that lawsuit, was what Customs determined to be the "court action" that it considered to constitute the basis for the recovery of "overpayments," as those terms are used in 19 U.S.C. § 159.64(b)(3).

---

[5] Paragraph (b)(2) of the section provides as follows:

> *Refunds resulting from reliquidation or court action.* If any of the underlying entries composing a prior distribution should reliquidate for a refund, such refund will be recovered from the corresponding Special Account. Similarly, refunds to importers resulting from any court action involving those entries will also be recovered from the corresponding Special Account. Refunds to importers will not be delayed pending the recovery of overpayments from domestic producers as set out in paragraph (b)(3) of this section.

Defendant's final argument in favor of dismissal is that "to the extent that any ambiguity exists in the CDSOA and 19 U.S.C. § 159.64, Customs' interpretation of the statute and regulation must be afforded deference and applied to authorize collection of any CDSOA overpayments." Def.'s Br. 10. Defendant summarizes its arguments by stating that "plaintiffs' claim does not rest upon a plausible legal theory" and that plaintiffs "can prove no set of facts that would demonstrate that Customs acted unlawfully or that would entitle them to relief." *Id.* at 24. As the court has explained, defendant has not shown that dismissal would be required even were the court to presume, *arguendo*, that 19 U.S.C. § 159.64, as a general matter, authorizes demand letters such as those at issue in this case. Adjudicating plaintiffs' claims will require judicial review on the agency record, which has not yet been filed.

### III. CONCLUSION AND ORDER

For the reasons discussed above, the court may not dismiss this action according to USCIT Rule 12(b)(6) for failure to state a claim on which relief can be granted. Therefore, the court must deny defendant's motion.

Upon consideration of defendant's motion to dismiss, upon all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dec. 18, 2017), ECF No. 12, be, and hereby is, denied; it is further

**ORDERED** that the parties shall file, on or before August 31, 2018, a proposed schedule in accordance with USCIT Rule 56.1 to govern further proceedings in this case; and it is further

**ORDERED** that the caption be amended to read as it appears on this Opinion and Order.

                                                  /s/ Timothy C. Stanceu
                                                Timothy C. Stanceu, Chief Judge

Dated: August 6, 2018
       New York, New York