Slip Op 19-172

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DAK AMERICAS LLC and AURIGA POLYMERS INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Timothy C. Stanceu, Chief Judge <br><br> Court No. 17-00195 |

## OPINION

[Denying plaintiffs' motion for judgment on the agency record]

Dated: December 27, 2019

*Paul C. Rosenthal*, Kelley Drye & Warren, LLP, of Washington, D.C., for plaintiffs DAK Americas LLC and Auriga Polymers Inc. With him on the brief were *David C. Smith*, *Cameron R. Argetsinger*, and *Joshua R. Morey*.

*Mikki Cottet*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel were *Suzanna Hartzell-Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection.

Stanceu, Chief Judge: Plaintiffs brought this action to contest written demands by U.S. Customs and Border Protection ("Customs" or "CBP") for the return to the government of certain monetary payments plaintiffs previously received from Customs under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"). 19 U.S.C. § 1675c, Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549 (2000) (*repealed by* Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006)). Before the court is plaintiffs' motion for judgment on the agency record under USCIT Rule 56.1. The court denies the motion.

Case 1:17-cv-00195-TCS    Document 45    Filed 12/27/19    Page 2 of 18

Court No. 17-00195                                                                                                          Page 2

## I. BACKGROUND

Background is presented in the court's previous opinion in this case and is supplemented herein. *DAK Americas LLC v. United States*, 42 CIT __, Slip Op. 18-95 (Aug. 6, 2018) ("*DAK Americas I*").

Plaintiffs are "affected domestic producers" ("ADPs"), which is the term used in the CDSOA to identify parties eligible to receive monetary distributions that are paid under the CDSOA as compensation for qualifying expenses from duties collected under an antidumping duty ("AD") or countervailing duty order. Plaintiffs DAK Americas LLC ("DAK Americas") and Auriga Polymers Inc. ("Auriga") received annual CDSOA distributions under an AD order on polyester staple fiber ("PSF") from the Republic of Korea; DAK Americas also received distributions in its capacity as a successor-in-interest to Wellman Inc. ("Wellman"), another ADP under that order and an AD order on PSF from Taiwan.[1]  Compl. ¶¶ 2-4.

### 1. The Demand Letters

In 2017, Customs issued letters (the "demand letters") to DAK Americas, Wellman, and Auriga demanding the partial repayment of certain monetary distributions that Customs paid to these parties under the CDSOA. The demand letters identified as the reason for the repayment demands the settlement of litigation (the "*Nan Ya*" litigation) before this Court, to which plaintiffs were not parties. *See* Order of Dismissal, *Nan Ya Plastics Corp., Am. v. United States*, Ct. No. 08-00138 (June 15, 2015), ECF No. 140 (Order of Dismissal following parties'

---

[1] *See Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Polyester Staple Fiber From the Republic of Korea and Antidumping Duty Orders: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan*, 65 Fed. Reg. 33,807, 33,807-08 (Int'l Trade Admin. May 25, 2000).

Stipulation of Dismissal) ("*Nan Ya* Dismissal Order"). The *Nan Ya* litigation involved the issue of whether Nan Ya Plastics Corp., Americas ("Nan Ya"), also a domestic producer of PSF, qualified as an ADP under the CDSOA. This litigation did not proceed to a judgment and resulted in a settlement agreement. *Nan Ya* Settlement Agreement (Feb. 12, 2015) (Admin.R.Doc. No. 1 at 5-11) ("Settlement Agreement"). Further to the settlement, Nan Ya was added retroactively to the list of ADPs published by the U.S. International Trade Commission ("ITC") for the Korea and Taiwan PSF orders, effective as of Fiscal Year 2007 and for subsequent fiscal years. Letter from ITC to Customs (Feb. 25, 2015) (Admin.R.Doc. No. 5 at 84) ("Letter from ITC"). In the demand letters, Customs characterized the repayments it sought from the plaintiffs in this case as plaintiffs' pro-rata shares of the payments the government made to Nan Ya as a result of the settlement of the *Nan Ya* litigation, which were not otherwise available in CDSOA accounts.

Customs issued the four demand letters nearly two years after the *Nan Ya* settlement, as follows.

The March 10, 2017 letter Customs sent to DAK Americas sought claimed overpayments of $231,148.82 made under the Korea AD Order for Fiscal Years 2007 through 2011. Customs Demand Letter to DAK Americas (Mar. 10, 2017) (Admin.R.Doc. 6 at 86-87) ("Demand Letter to DAK Americas").

The March 10, 2017 letter to Wellman (sent to the address of affiliate DAK Americas) sought $443,300.52 for claimed overpayments under both AD orders for Fiscal Years 2007 and 2008 ($223,637.61 under the Taiwan AD Order and $219,662.91 under the Korea AD Order). Customs Demand Letter to Wellman (Mar. 10, 2017) (Admin.R.Doc. 7 at 89-90) ("Demand Letter to Wellman").

The March 10, 2017 letter to Auriga sought repayment of $11,548.84 received under the Korea AD Order for Fiscal Year 2011. Customs Demand Letter to Auriga (Mar. 10, 2017) (Admin.R.Doc. 8 at 92-93) ("First Demand Letter to Auriga").

Customs sent a second demand letter to Auriga, dated May 26, 2017, seeking repayment of an additional $95,079.75 in CDSOA distributions Auriga received "due to a supplemental distribution" under the Korea PSF Order for Fiscal Year 2010, which Customs stated "should have been included" in its earlier demand letter to Auriga (for a total demand of $106,628.79). Customs Updated Demand Letter to Auriga (May 26, 2017) (Admin.R.Doc. 9 at 95-95) ("Second Demand Letter to Auriga").

On May 31, 2017, Auriga repaid the sum of $11,548.84 demanded by Customs in the First Demand Letter to Auriga. Check from Auriga to Customs (May 31, 2017) (Admin.R.Doc. 10 at 109). No plaintiff has paid any other portion of the amounts demanded by Customs. Compl. ¶¶ 33-34.

### 2. The Denial of Defendant's Motion to Dismiss

In *DAK Americas I*, the court denied a Rule 12(b)(6) motion by the government seeking dismissal of this action for failure to state a claim on which relief can be granted. 42 CIT at __, Slip Op. 18-95 at 15.

### 3. The Pending Motion and Related Proceedings

Plaintiffs filed the motion before the court, for judgment on the agency record under USCIT Rule 56.1, on December 28, 2018. Pls.' Rule 56.1 Mot. for J. on the Agency R. (Dec. 28, 2018), ECF No. 31 ("Pls.' Mot."); Pls.' Mem. of Points and Authorities (Dec. 31, 2018), ECF No. 32 ("Pls. Mem."). Defendant responded on March 22, 2019. Def.'s Resp. in Opp. to Pls.' 56.1 Mot. for J. on the Agency R. (Mar. 22, 2019), ECF No. 37 ("Def.'s Resp."). Plaintiffs

replied on April 19, 2019.  Reply in Supp. of Pls.' Rule 56.1 Mot. for J. on the Agency R. (Apr. 19, 2019), ECF No. 38 ("Pls.' Reply").  The court held oral argument on plaintiffs' motion on July 23, 2019.  *See* Oral Argument (July 23, 2019), ECF No. 43.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The court exercises jurisdiction according to 28 U.S.C. § 1581(i), the "residual" jurisdiction provided by section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i).[2] Paragraph (2) of § 1581(i) provides the Court of International Trade jurisdiction of "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(2).  Paragraph (4) of subsection (i) provides for jurisdiction of "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection . . . ."  *Id.* § 1581(i)(4).

### B. Standard of Review

In an action brought under 28 U.S.C. § 1581(i), the court conducts its review according to the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706, under which a court must hold unlawful agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  28 U.S.C. § 2640(e).

---

[2] Citations to the Customs Courts Act of 1980 are to the relevant portions of Title 28 of the U.S. Code, 2006 edition.  Citations to Title 19 of the Code of Federal Regulations are to the 2017 edition.

C. Plaintiffs' Claims and Demands for Relief

Plaintiffs claim that each of the CBP's letters demanding recovery, or "clawback," of their previously paid CDSOA distributions are invalid agency actions that must be set aside. They base their claims in large part on their construction of two provisions in the Customs Regulations implementing the CDSOA.

They contend that section 159.64(b)(3) of the regulations, 19 C.F.R. § 159.64(b)(3), which addresses the return to Customs of overpayments of CDSOA distributions, is applicable only where Customs seeks to recoup distributions to account for refunds of antidumping and countervailing duties made to importers arising from import entries. Pls.' Mem. 12-18. They maintain that this provision, therefore, does not support a demand for the return of past CDSOA payments made to affected domestic producers and, specifically, does not apply in the specific situation where, as here, a settlement of litigation against the government resulted in the addition of a new ADP. *Id.*

Plaintiffs argue, further, that CBP's demands are precluded by another provision in the Customs Regulations implementing the CDSOA, 19 C.F.R. § 159.64(f). Pls.' Mem. 18. This provision creates a general rule, subject to certain exceptions, that "any distribution made to an affected domestic producer under this section shall be final and conclusive on the affected domestic producer." 19 C.F.R. § 159.64(f).

Additionally, plaintiffs argue that the CDSOA does not allow Customs to reallocate CDSOA distributions retroactively among ADPs in an attempt to seek clawback of previously-paid distributions. They emphasize, in particular, the lengths of time elapsing since the original payments (dating back to Fiscal Year 2007) and the issuance of the demand letters in 2017. Pls.' Mem. 1.

Plaintiffs seek three forms of relief. They seek, first, to have the demand letters set aside as unlawful agency actions. Pls.' Mot. 1. Second, they would have the court enjoin Customs "from making such demands on Plaintiffs in the future." *Id.* Finally, they seek an order "that Customs shall refund to Auriga Polymers Inc. the $11,548.84 payment that Auriga made to Customs in response to Customs' unlawful demand in its March 10, 2017 letter." *Id.*

### D. Plaintiffs Have Not Established their Entitlement to a Remedy in this Action

Under the standard of review, the court is not called on to decide whether defendant ultimately will or will not succeed in recovering amounts from CDSOA distributions Customs previously paid to the plaintiffs. Instead, the court must decide whether the specific agency actions challenged in this case—i.e., the issuances of the demand letters to plaintiffs—are invalid as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law on the grounds plaintiffs assert in support of their motion for judgment on the agency record. The court concludes they are not.

In summary, the court bases its decision on the following five conclusions: (1) Contrary to plaintiffs' argument, Customs did not misinterpret section 159.64(b)(3) of the Customs Regulations is deciding to demand the payments at issue; (2) Section 159.64(b)(3) was not the sole ground upon which Customs sought the repayments from plaintiffs; (3) Section 159.64(f) of the Customs Regulations does not invalidate the demand letters; (4) The CDSOA is silent on the question of whether the United States may seek to recover erroneous overpayments to ADPs; and (5) In the circumstances of this case, it was neither arbitrary and capricious, nor an abuse of discretion, for Customs to seek the repayments from plaintiffs based on the retroactive designation of a new ADP for the relevant AD orders.

### 1. Customs Did Not Issue the Demand Letters Based upon a Misinterpretation of Section 159.64(b)(3) of the Customs Regulations

In support of their claim, plaintiffs argue that paragraph (3) of section 159.64(b) of the Customs Regulations, 19 C.F.R. § 159.64(b)(3), does not authorize the collection actions taken by the demand letters. Their argument turns on the meaning of the phrase "and/or court actions" as it appears in the first sentence in that paragraph, which reads as follows:

> (3) *Overpayments to affected domestic producers.* Overpayments to affected domestic producers resulting from subsequent reliquidations and/or court actions and determined by Customs to be not otherwise recoverable from the corresponding Special Account as set out in paragraph (b)(2) of this section will be collected from the affected domestic producers.

19 C.F.R. § 159.64(b)(3). In support of this argument, plaintiffs point to the immediately preceding paragraph of subsection (b), i.e., paragraph (2), which provides as follows:

> (2) *Refunds resulting from reliquidation or court action.* If any of the underlying entries composing a prior distribution should reliquidate for a refund, such refund will be recovered from the corresponding Special Account. Similarly, refunds to importers resulting from any court action involving those entries will also be recovered from the corresponding Special Account. Refunds to importers will not be delayed pending the recovery of overpayments from domestic producers as set out in paragraph (b)(3) of this section.

*Id.* § 159.64(b)(2). In summary, plaintiffs' argument is that the words "and/or court actions" as used in paragraph (3) must be read to refer to the phrase "court action involving those entries" as it appears in paragraph (2), especially in the context of the words "refunds to importers" in paragraph (2), and that the settlement of the *Nan Ya* litigation is not within the intended meaning of the term "court actions" as used in paragraph (3). Pls.' Mem. 15. Plaintiffs cite in support of their argument certain language in the preamble to the final rulemaking, which discusses these provisions solely in the context of refunds of duties on import entries. Pls.' Mem. 16-17 (quoting *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers* (Final Rule), 66 Fed. Reg. 48,546, 48,549-50 (Cust. & Border Prot. Sept. 21, 2001).

The court is not persuaded by plaintiffs' argument. Customs used the phrase "and/or court actions" in paragraph (3) without qualifying language analogous to the language ". . . involving those entries" or "refunds to importers" that it used in paragraph (2). Also, the qualifier in paragraph (3), "as set out in paragraph (2) of this section," is not necessarily read (as plaintiffs do, Pls.' Mem. 15-16) to modify the term "[o]verpayments" and thus limit the operation of paragraph (3) to the circumstances of paragraph (2). Instead, in context it is more reasonably interpreted to modify only the nearby words "not otherwise recoverable from the corresponding Special Account."

While it might be argued that the relationship of paragraph (3) to paragraph (2) is an indication of some ambiguity as to the meaning of paragraph (3), the preamble to the proposed rule contains language indicating that Customs intended to recover overpayments that did not necessarily result from reliquidations or court actions related to refunds of duties arising from import entries. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers* (Proposed Rule), 66 Fed. Reg. 33,920, 33,923 (Cust. & Border Prot. June 26, 2001) ("*Any* overpayment of a distribution made by Customs to an affected domestic producer will be subject to billing and other collection methods, including, *but not limited to*, administrative offsets resulting from a reliquidation." (emphasis added)). The preamble language in the final rule on which plaintiffs rely does not state that only court actions involving duty refunds to importers will result in actions to recover overpayments to ADPs, and there is nothing therein indicating that Customs qualified or limited its earlier expression of intent as reflected in the preamble to the proposed rule.

In summary, the language of 19 C.F.R. § 159.64(b) might be imperfectly drafted and thereby not remove all ambiguity, but there is a sufficient expression of agency intent,

particularly in the preamble to the proposed rule, to recover a broader class of overpayments than that posited by plaintiffs. The court concludes that the demand letters are not invalidated by a misinterpretation of this regulation on the part of Customs.[3]

Even were the court to agree with plaintiffs that § 159.64(b)(3) was intended to refer only to overpayments resulting from those court actions that involve refunds upon import entries, it still could not declare the demand letters invalid or provide the other relief plaintiffs seek. That is because the regulations do not preclude Customs from seeking to recoup overpayments of previous CDSOA distributions using authority other than that provided specifically by section 159.64(b)(3). In that regard, as discussed below, Customs did not rely solely, or even principally, on section 159.64(b)(3) in demanding payments from the plaintiffs in this case.

2. Customs Did Not Rely Exclusively on Section 159.64(b)(3) of the Customs Regulations for Authority to Demand Repayment of Previous CDSOA Distributions

In its previous opinion, the court denied the government's motion to dismiss, ruling that defendant's motion could not be adjudicated absent examination of the administrative record in this case. The court noted its inability to determine, without a record that included the demand letters, the authority or authorities under which Customs grounded its demands for repayment. *DAK Americas I*, 42 CIT at __, Slip Op. 18-95 at 14.

---

[3] The court reaches this conclusion without affording the type of deference to an agency's interpretation of its own regulations of the type addressed by the Supreme Court in *Auer v. Robbins*, 519 U.S. 452 (1997). *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-17 (2019) (limiting *Auer* deference to official agency positions). The court's conclusion that the demand letters are not invalidated by an agency misinterpretation of 19 C.F.R. § 159.64(b)(3) accords with certain *dicta* in *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1383-84 (Fed. Cir. 2012) (directing Customs to fashion an appropriate remedy in the instance of a court decision retroactively recognizing an additional ADP and clarifying that 19 C.F.R. § 159.64(b)(3) applies to overpayments made to the other ADPs).

The administrative record shows that only in the second letter to Auriga did Customs rely specifically on section 159.64(b)(3) of the Customs Regulations, 19 C.F.R. § 159.64(b)(3), for the authority to demand return of claimed overpayments to an ADP. Second Demand Letter to Auriga at 95-96. That letter, however, which referred to the First Demand Letter to Auriga, also relied on other authority for its conclusion that "Auriga is jointly and severally liable for the return of any CDSOA overpayments that were previously paid to its predecessor," including the *Notice of Intent to Distribute Offset for Fiscal Year 2011*, 76 Fed. Reg. 31,020, 31,021 (Cust. & Border Prot. May 27, 2011). *Id.* at 96. The texts of the three initial demand letters, i.e., the Demand Letters to DAK Americas and to Wellman, and the First Demand Letter to Auriga, indicate that Customs did not rely exclusively, or even principally, on section 159.64(b)(3) of the Customs Regulations for authority to demand repayment. In summary, the court's interpretation of all four demand letters is that Customs did not rely solely on 19 C.F.R. § 159.64(b)(3).

Three of the four demand letters, the Demand Letters to DAK Americas and Wellman, and the First Demand Letter to Auriga, which are identical in respects relevant to the question of the claimed authority for the repayment demand, state in the first paragraph that certain past CDSOA distributions "were made in accordance with 19 U.S.C. § 1675c [a general citation to the CDSOA as a whole] and 19 C.F.R. §§ 159.61 through 159.64 [which together comprise the entire set of CDSOA regulations]." Demand Letter to DAK Americas at 86; Demand Letter to Wellman at 89; First Demand Letter to Auriga at 92.

The letters continue by stating that "[a]s more fully set out below, your company was overpaid and the overpayment must be immediately returned to U.S. Customs and Border Protection (CBP)." Demand Letter to DAK Americas at 86; Demand Letter to Wellman at 89; First Demand Letter to Auriga at 92. The next paragraph provides the stated reason for the

obligation to return funds to the government.  It does not mention section 159.64(b)(3) but instead explains the reason for the demand by citing a feature of the CDSOA: the awarding of distributions on a pro-rata basis to the various affected domestic producers who may qualify to receive distributions under an AD or CVD order.  That paragraph (quoted from the Demand Letter to DAK Americas and First Demand Letter to Auriga) is as follows:

> When the amount of qualifying expenditures for a particular antidumping or countervailing duty case exceeds the collections available for distribution, the CDSOA requires pro-rata distributions among the eligible affected domestic producers.  19 U.S.C. § 1675c(d)(3); 19 C.F.R. § 159.64(c)(2).  For the fiscal year(s) noted above [Fiscal Years 2007 through 2011], there were insufficient CDSOA-subject collections to satisfy each affected domestic producer's qualifying expenditures for A-580-839 [referring to AD duties collected under the AD order on PSF from Korea].  As such, you were paid a pro-rata share for A-580-839 in each of these fiscal years.  However, due to certain litigation in the Court of International Trade involving A-580-839, an additional entity has been lawfully determined to be an eligible domestic affected producer for A-580-839 for Fiscal Years 2007 onward.  *Nan Ya Plastics Corp., Am. v. United States*, CIT Case. No. 08-00138.  Therefore, the pro-rata shares for A-580-839 must be retroactively re-calculated and you must return the amounts noted below, which constitute an erroneous overpayment.

Demand Letter to DAK Americas at 86; First Demand Letter to Auriga at 92; *see also* Demand Letter to Wellman at 89 (similar).  The citations to 19 U.S.C. § 1675c(d)(3) and 19 C.F.R. § 159.64(c)(2) in the quoted language are references to the "pro-rata" nature of distributions of CDSOA benefits among ADPs.  The three letters refer to section 159.64(b)(3) on the second pages of each, but they do so in the context of the provision therein under which interest accrues on amounts demanded but not satisfied.  Demand Letter to DAK Americas at 87; Demand Letter to Wellman at 90; First Demand Letter to Auriga at 93.  ("In accordance with 19 C.F.R. 159.64(b)(3), any amount not repaid within 30 days of the date of the bill will begin to accrue interest at the rate indicated in 19 C.F.R. § 24[.3]a(c).").

3. Section 159.64(f) of the Customs Regulations Does Not Invalidate the Demand Letters

Plaintiffs' argument that CBP's demands are precluded by another provision in the Customs Regulations implementing the CDSOA, 19 C.F.R. § 159.64(f), under which "any distribution made to an affected domestic producer under this section shall be final and conclusive on the affected domestic producer," Pls.' Mem. 18, fares no better. As defendant argues, Def.'s Resp. 20, the provision is expressly binding only on the affected domestic producer, and, regardless, specifies that CBP actions to recover overpayments taken under section 159.64(b)(3) are an exception to the administrative finality provided in section 159.64(f). *See* 19 C.F.R. § 159.64(f) ("Except as provided in paragraphs (b)(3) and (c)(3) of this section . . . .").

4. The CDSOA Is Silent on the Question of Whether the United States May Seek to Recover Amounts It Deems to Be Overpayments of CDSOA Distributions to ADPs

In its response brief, defendant argues that CBP's demands were made "in accordance with the CDSOA's statutory mandate" that an eligible ADP is to receive a pro-rata share of the amount collected by Customs in the preceding fiscal year, based on qualifying expenditures certified by all ADPs for the commodity. Def.'s Resp. 13. In their reply brief, plaintiffs dispute this premise, arguing that the CDSOA "does not allow Customs to retroactively reallocate CDSOA distributions among ADPs years after those distributions were made." Pls.' Repl. 3-4. Plaintiffs point to several procedural time limitations the statute applies to the ITC and Customs "regarding how and when to perform the actions necessary to effect distributions to ADPs." *Id.* at 4 (identifying the 60-day time limit for ITC's providing Customs a list of petitioners and supporters of the petition, the 30-day time limit prior to distribution for CBP's publication of an intention to distribute, and the 60-day time limit for distribution following the beginning of a fiscal year). According to plaintiffs, the Taiwan and Korea AD orders were issued prior to the

enactment of the CDSOA, requiring the ITC to submit the list of petitioners and petition supporters within 60 days of enactment, and "[t]here is no provision in the CDSOA that permits the ITC to submit a revised list of ADPs to Customs fifteen years after the enactment of the CDSOA." *Id*. They argue, further, that "there is no provision in the CDSOA that would allow Customs to act on such a revised list." *Id*. at 4-5. They conclude that "there is no legal basis for Customs to unwind each of the statutorily mandated steps that it was required to take in distributing CDSOA funds under the Taiwan and Korea PSF Orders between 2007 and 2011 simply because Customs and the ITC decided, years after the fact, and in the context of a litigation settlement, to retroactively add Nan Ya to the petition support list for those orders." *Id*. at 5.

As plaintiffs themselves recognize, "the CDSOA says nothing about clawing back funds from domestic producers." *Id*. at 2. While the statute does not specifically authorize clawback in the event of an erroneous overpayment to an ADP, neither does it preclude it. Just as it is silent on the matter of an ADP's receiving an overpayment due to, for example, a clerical error, the CDSOA is also silent on the particular situation occurring when the ITC determined—in the government's current view, erroneously—that a particular domestic producer (in this instance, Nan Ya) did not qualify as a petitioner, or a supporter of the petition, and therefore did not receive *pro rata* distributions that the government, during litigation, later concluded the producer was entitled to receive. It was on that basis that the demand letters considered the amounts being sought to be erroneously-made overpayments to the plaintiffs. The written decision to add Nan Ya retroactively to the list of petitioners and petition supporters for the Taiwan and Korea AD orders on polyester staple fiber (a decision which plaintiffs, who limit their claim to CBP's

issuance of the demand letters, do not challenge), is on the administrative record of this case. Letter from ITC at 84.

Plaintiffs' argument that nothing in the CDSOA allows Customs to act on the revised list of petitioners and petition supporters is also flawed. It presumes, without basis, that the CDSOA's silence on the matter of erroneous overpayments equates to a conclusion that Customs, as the agency principally responsible for administering the CDSOA, is statutorily prohibited from seeking to recover such overpayments. The 30-day and 60-day time limits applicable to certain actions Customs is to take, in the ordinary course of administering the CDSOA, are not an indication of congressional intent to establish such a prohibition in the special situation presented by this case.

Plaintiffs argue, further, that the "spirit and intent" of the CDSOA, in which Congress intended to remediate harm to domestic producers, are frustrated by clawback of distributions years after payment. Pls.' Repl. 6-7. But nothing in the CDSOA provides or suggests that Congress intended for an ADP to be allowed to retain distributions that may be shown to have been erroneously paid.

In summary, while the court need not, and does not, opine on whether the United States ultimately could recover on the demands made in the letters, it nevertheless concludes that CBP's action of issuing those demands was not precluded by the CDSOA. As discussed below, that action, additionally, was neither arbitrary and capricious, nor an abuse of discretion, on the part of Customs.

    5. It Was Neither Arbitrary and Capricious, Nor an Abuse of Discretion, for Customs to Seek from Plaintiffs the Repayment of Certain Past CDSOA Distributions

The settlement of the *Nan Ya* litigation in this Court followed this Court's vacating, in part, its judgment in *Nan Ya Plastics Corp., Am. v. United States*, 36 CIT __, 853 F. Supp. 2d

1300 (2012) (*"Nan Ya I"*). In *Nan Ya I*, a three-judge panel of this Court held that the ITC did not err in denying Nan Ya ADP status under the CDSOA. Nan Ya had expressed support for the AD petitions on PSF in the preliminary phase of the ITC investigation but in the final phase had selected the "take no position" box in the ITC's questionnaire. On July 13, 2012, the day after this Court issued its decision in *Nan Ya I*, the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") issued a decision holding that a domestic producer that, like Nan Ya, had expressed support for a petition in the preliminary phase of the ITC's investigation but took "no position" on that petition in the final phase, satisfied the petition support requirement of the CDSOA. *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1382-1383 (Fed. Cir. 2012) ("*Chez Sidney*").

Following the decision of the Court of Appeals, this Court vacated its judgment of dismissal and issued a new judgment dismissing only constitutional claims Nan Ya had raised and allowing Nan Ya's statutory claims to proceed upon a third amended complaint. *Nan Ya Plastics Corp., Am. v. United States*, 37 CIT __, 916 F. Supp. 2d 1376 (2013). On that complaint, Nan Ya and the United States reached a settlement of the litigation. The Settlement Agreement provided that "[o]f the $1,762,558.67 to be paid to Nan Ya, $108,117.60 will be paid from the special accounts established pursuant to 19 U.S.C. § 1675c(e) for the antidumping duty orders on polyester staple fiber from Korea (A580839) and Taiwan (A583833), and the Department of Justice will submit appropriate documentation to the Department of Treasury for the payment of the balance, $1,654,441.07." Settlement Agreement ¶ 9. Language in the Settlement Agreement shows that the government contemplated collecting overpayments from the ADPs that received distributions under the AD orders on polyester staple fiber. *Id.* ¶ 17 ("The parties may cite to this agreement only as is necessary to effect the terms of this agreement

and as may be necessary for the Government to collect overpayments made to Nan Ya or other domestic producers (ADPs) for Fiscal Years 2006 through Fiscal Years 2011 for antidumping duty orders on polyester staple fiber from Korea (A580839) and Taiwan (A583833).").

In its decision in *Chez Sidney*, the Court of Appeals also contemplated that the United States would seek the return of overpayments to other ADPs to satisfy a judgment in favor of the plaintiff in that case, which the Court of Appeals concluded must be recognized retroactively as a fully-qualifying ADP. *Chez Sidney*, 684 F.3d at 1383 ("To be sure, 19 C.F.R. § 159.64(b)(3) will govern how Customs recovers the overpayments it made to other ADPs in this case.").

The government's retroactive designation of Nan Ya as an additional ADP under the PSF AD orders had a legal basis in the precedential decision of the Court of Appeals in *Chez Sidney*. Although, as plaintiffs argue, considerable time has passed since the original distributions for which Customs sought repayment, that fact alone, while possibly relevant in the event of future actions by the government to collect on the demands, does not by itself make CBP's attempts to seek that repayment arbitrary and capricious, or an abuse of discretion, on the administrative record of this case.

### III. CONCLUSION

Because plaintiffs, in contesting the demand letters, have not demonstrated their entitlement to a remedy, the court does not declare the demand letters invalid, does not order return to Auriga of the $11,548.84 payment Auriga previously made to Customs,[4] and does not

---

[4] The court decides only that plaintiff Auriga has not established its right to return of the payment on the grounds it asserted in moving for judgment on the agency record. The court does not decide whether Auriga ultimately may obtain relief on some ground not asserted in this litigation.

enjoin Customs from making future demands on plaintiffs for return of CDSOA distributions. Upon denying plaintiffs' motion for judgment on the agency record, the court will enter judgment in favor of defendant United States in accordance with USCIT Rule 56.1(b).

        /s/ Timothy C. Stanceu
        Timothy C. Stanceu, Chief Judge

Dated: December 27, 2019
      New York, New York